**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NOLAN KLEIN, ) | 3:05-CV-0390-PMP (VPC) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| DON HELLING, ET AL., ) | |
| Defendants. ) | January 17, 2007 |

This Report and Recommendation is made to the Honorable Philip M. Pro, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for a preliminary injunction (#36). Defendants opposed (#46) and plaintiff replied (#54). The court has thoroughly reviewed the record and the motion and recommends that plaintiff's request for a preliminary injunction (#36) be denied.

**I. HISTORY & PROCEDURAL BACKGROUND**

Plaintiff Nolan E. Klein, a *pro se* prisoner, is currently incarcerated by the Nevada Department of Corrections ("NDOC") at the Lovelock Correctional Center ("LCC") (#16, 21). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials retaliated against him after he exercised his First Amendment rights (#21).[1] Plaintiff names as defendants Don Helling, Warden of Northern Nevada Correctional Center ("NNCC"); James Benedetti, Assistant Warden of NNCC; and Chuck Fournier, Correctional Officer/Investigator at NNCC. *Id*.

---

[1] Plaintiff filed his original complaint on August 8, 2005 (#7) and his first amended complaint on January 6, 2006 (#21).

In count I, plaintiff alleges that the defendants retaliated against him by removing him from the general population at NNCC and transferring him to LCC "because of Plaintiff's efforts to exercise his U.S. Constitution First Amendment Rights to seek redress through the court and grievances, his right to free speech, his right to provide information, as well as his right to assist other inmates with legal matters." *Id*., p. 4. Plaintiff states that because of the allegedly retaliatory transfer, he lost his "prison job, pay, work credits, and earned preferred housing assignment, his religious practices, physical disabilities and property." *Id*.

Specifically, the plaintiff contends that due to back and hip injuries he was "medically assigned" to NDOC's regional medical facility at NNCC in 2001. *Id*., ¶ 1. Plaintiff was housed in NNCC Unit 3, which is considered a unit where housing rules are more relaxed to facilitate the daily activities of disabled prisoners. *Id*., ¶¶ 2-3. Plaintiff alleges that in October 2004, at the direction of the Warden, NNCC began to strictly enforce the prison's housing rules in Unit 3 to purposely make it more difficult for disabled prisoners. *Id*., ¶ 4. Plaintiff contends that other Unit 3 inmates consulted him and it was agreed that plaintiff would attempt to find counsel to file a class action to ensure compliance with the Americans with Disabilities Act ("ADA"). *Id*., ¶ 5. Plaintiff contacted Treva Hearne, Esq. ("Ms. Hearne"), who sent a letter to Jackie Crawford, Director of NDOC, setting out the Unit 3 inmates' concerns. *Id*., ¶¶ 6-8; *see also* #43, Ex. 1. Allegedly, Unit 3 conditions subsequently returned to pre-October 2004 conditions. *Id*., ¶ 8.

Beginning in March 2005, a number of incidents occurred which led plaintiff to conclude that defendants were retaliating against him for the potential class action, as well as for contributing to a book entitled, *To Prove His Innocence*, which was published in February 2005 and reflected poorly on certain NDOC administration officials, including defendant Helling. *Id*., ¶ 10. The allegedly retaliatory incidents include the following: (1) a law librarian told plaintiff

that he should be locked up or transferred for promoting a lawsuit (*Id.*, ¶ 9); (2) defendants canceled two appointments Ms. Hearne made to meet with the plaintiff without explanation, although Ms. Hearne's law partner was allowed to meet with plaintiff on the same day Ms. Hearne's cancelled appointment had been scheduled (*Id.*, ¶¶ 10-11); (3) prison officials moved the plaintiff from the medical unit to a restrictive unit at NNCC, Unit 7b, allegedly because the prison was investigating whether plaintiff had assisted another inmate ("Inmate A"),[2] in locating counsel to draft a trust ("Inmate A Trust") (*Id.*, ¶¶ 13-14); (4) defendant Fournier, who was the officer in charge of the Inmate A Trust investigation, was disinterested when Ms. Hearne called to inform him that the plaintiff would not benefit under the Inmate A Trust (*Id.*, ¶ 15); and (5) prison officials transferred plaintiff from NNCC Unit 7b to LCC while he was still under investigation for the Inmate A Trust matter (*Id.*, ¶¶ 17-21).

Plaintiff alleges that prior to his transfer to LCC, he had not had a disciplinary infraction in over five years, and that to this day, prison officials have never told him why he was under investigation, nor has plaintiff ever received any disciplinary citation or violation. *Id.*, ¶¶ 21-23. Plaintiff was told that he could not be transferred back to NNCC from LCC until he was no longer under investigation, but shortly thereafter, he was transferred back to NNCC and placed in restrictive Unit 7b instead of Unit 3,[3] apparently because he had been placed on another inmates' (later discovered to be Inmate A) "enemy list." *Id.*, ¶¶ 26-28. Plaintiff alleges that being placed on an inmate's "enemy list" is a method defendants use to keep prisoners in restrictive housing when defendants have no legitimate reason to do so, since an inmate has no way to challenge another inmate's confidential "enemy list." *Id.*, ¶¶ 29-30. Plaintiff further alleges that Inmate A has informed him that he did not place the plaintiff on his "enemy list." *Id.*, ¶ 31.

---

[2] For confidentiality purposes, the court will refer to this inmate only as "Inmate A."

[3] Plaintiff has since been transferred back to LCC (#16).

3

On June 28, 2006, plaintiff filed a motion for a preliminary injunction seeking an order from the court requiring the defendants to stop retaliating against the plaintiff for the exercise of his First Amendment rights (#36).[4]

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A. Discussion**

**1. Preliminary Injunction**

The Prison Litigation Reform Act ("PLRA") states that

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief...

18 U.S.C. § 3626(2).

The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit are: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *See Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *see also Clear Channel Outdoor,*

---

[4] Also pending before the court are plaintiff's motion for summary judgment (#38) and defendant's cross motion for summary judgment (#50), which the court will address shortly.

*Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Alternatively, the moving party may demonstrate *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor. *Johnson*, 72 F.3d at 1430 (emphasis added); *see also Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003). The Ninth Circuit has stated that these alternatives represent "extremes of a single continuum" rather than two separate tests and thus, the "greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813.

Preliminary injunctive relief is designed to preserve the status quo until the court has an opportunity to hear the lawsuit on its merits. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006). The "granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 325 F.2d 141, 143 (9th Cir. 1964). Based on this discretion, the court may deny the motion if it declines to decide disputed issues of fact because court are not bound to decide "doubtful and difficult questions of law or disputed issues of fact" in deciding whether to grant or deny a motion for injunction. *Id*.

**2. First Amendment Retaliation**

Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials may be sued under Section 1983 for retaliating against a prisoner for exercising his or her constitutional rights. *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct,

5

and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).

Although an inmate alleging a retaliatory transfer has "no constitutionally-protected liberty interest in being held at, or remaining at, a given facility," an inmate need not establish "an independent constitutional interest in… assignment to a given prison… because the crux of his claim is that state officials violated his *First Amendment* rights by retaliating against him for his protected speech activities." *Pratt*, 65 F.3d at 806 (emphasis in original). Retaliation claims must be evaluated in light of the deference accorded to prison officials. *Id*. at 807. The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id*. at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). The Ninth Circuit has recognized that "timing can properly be considered as circumstantial evidence of retaliatory intent." *Id*., *citing Pratt*, 65 F.3d at 808.

**B. Analysis**

In his motion, plaintiff repeats many of the factual allegations made in his first amended complaint (#36; *see also* #37, Plaintiff's Affidavit; *see also generally* #43, Plaintiff's Exhibits to Motion and #55, Plaintiff's Supplemental Exhibits to Motion). Plaintiff contends that despite his numerous medical problems, defendants transferred him to LCC from NNCC on May 3, 2005, for no reason and during the ongoing investigation of his involvement with the Inmate A Trust (#36, ¶ 16). Plaintiff contends that defendant Fournier placed his name on Inmate A's "enemy list" and will not remove it even though Inmate A did not request the action, never considered plaintiff an enemy, and has since requested that plaintiff be removed from his enemy list. *Id*., ¶¶ 15, 22. Plaintiff alleges that being on Inmate A's "enemy list" has kept him housed at LCC,

6

which is far from NNCC and the Regional Medical Center, and as a result, he is required to travel back and forth from LCC to NNCC to receive necessary medical care. *Id*. ¶¶ 12, 23. Plaintiff alleges that the traveling has resulted in a deterioration of his medical condition, that at LCC he has had to do without special accommodations to assist him to ambulate with his disabilities, he has not received required prescription medication, and he has received necessary medical care long after it was requested.[5] *Id*., ¶¶ 7, 15-19.

Defendants first ask the court to consider the differences between a "prohibitory" injunction – which preserves the status quo – and a mandatory injunction – which compels affirmative action and changes the status quo (#46, pp. 7-11). Their position is that plaintiff's request that he be taken off Inmate A's enemy list and moved back to the medical unit at NNCC is a mandatory injunction. Mandatory injunctions are subject to "heightened scrutiny" and are "particularly disfavored." *Id*., *citing Anderson v. U.S.*, 612 F.2d 1112, 1114-1115 (9th Cir. 1979). Defendants contend that the plaintiff cannot meet the elements of a retaliation claim because the transfer decision was made to protect other inmates from fraud similar to that which allegedly happened to Inmate A. Further, the plaintiff has no constitutional liberty interest to be housed in any one particular institution. *Id*., p. 19, *citing Hewitt v. Helms*, 459 U.S. 460, 467, n. 4 (1983). Defendants generally note that the courts "owe substantial deference to the judgment of prison administrators." *Id*., p. 18, *citing May v. Baldwin*, 109 F.3d 557, 563 (9th Cir. 1997).

Plaintiff contends that the timing of a transfer can be circumstantial evidence of retaliatory motive (#54, p. 3, *citing Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)). Plaintiff argues that according to defendant Helling's discovery responses, another inmate was potentially implicated

---

[5] Plaintiff states that he has permanent partial disabilities resulting from an injury to his right hip and femur; lower back injuries, including degenerative disc disease in the L2-L3-L4 of his spine; high blood pressure; and hepatitis C (#37, ¶ 31).

in the Inmate A Trust incident but was not removed from NNCC general population or separated from Inmate A. *Id*., p. 7. Moreover, there was nothing to indicate that the Inmate A Trust was a fraudm and when Ms. Hearne contacted investigators to tell them this, they did not listen to her. *Id*. Plaintiff had no access to the Inmate A Trust, was not named in it and had nothing to gain from it. *Id*., p. 13. Plaintiff asserts that his transfer for the alleged purpose of protecting other potential victims is a pretext. There is no evidence of other victims, and when the investigation began, defendant moved plaintiff to NNCC Unit 7b, allegedly for the safety and security of the elderly inmates, he still had access to these inmates in the general visitation room. *Id*., p. 8. Additionally, plaintiff claims that defendant Helling's interrogatory response outlining the documents relied upon is false because the defendant purports to rely on a report that was dated two days after prison officials made the decision to transfer the plaintiff. *Id*., p. 10. Finally, plaintiff contends that defendant Helling told plaintiff he did not consider plaintiff a threat and that Inmate A has never considered plaintiff a threat. *Id*.

**1. Procedural Issues**

As an initial matter defendants argue that the plaintiff has alleged facts in his motion for preliminary injunction which he did not allege in his first amended complaint; therefore, these facts have not been properly pled and exhausted (#46, p. 15). Plaintiff argues that his motion does not raise new issues, but simply presents evidence in support of his claim of retaliation and that he is not required to "identify every item of evidence in support of his general allegations in his complaint" (#54).

The court notes that plaintiff alleges specific facts in his motion, which tend to support an Eighth Amendment "deliberate indifference" claim that he received inadequate medical treatment at LCC, and that he is shuttled back and forth between LCC and NNCC for medical

8

treatment to the detriment of his health (#36, pp. 2-6). These allegations are not similar to those alleged in his complaint, which generally allege that damages (in the form of a deteriorating medical condition) have resulted from the alleged retaliatory transfer(#21). The "new" allegations in plaintiff's motion are specific complaints about the plaintiff's conditions of confinement and appear to have occurred since the alleged retaliatory transfer to LCC. *Id*. However, plaintiff *did* allege in his first amended complaint that the transfer to LCC has aggravated his medical condition (#21, ¶ 24(g)).

To the extent that the plaintiff is attempting to obtain relief from the court for his current condition of confinement at LCC, the court concludes that this is a new Eighth Amendment claim, and it disregards any attempt to raise new claims; however, to the extent that plaintiff makes these allegations merely as evidence of the damages he has sustained as a result of the alleged retaliatory transfer, the court will consider them in determining whether the plaintiff's claim is likely to succeed on its merits.

**2. Likelihood of Success on the Merits**

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

To prove a retaliation claim, the plaintiff must demonstrate that (1) a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal. *Rhodes v. Robinson*, 213 F.3d 443, 449 (9th Cir.

9

2000) and *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curium). Such claims must be evaluated in light of the deference accorded to prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1997). The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id*. at 806.

### a. Adverse Action

Defendants argue that the plaintiff cannot meet the first element of his retaliation claim because he cannot show that "adverse action" has been taken against him (#46, p. 19). Defendants contend that investigating the plaintiff for fraudulent conduct and separating him from potential fraud victims "does not constitute 'adverse action,' inasmuch as litigants do not have a protected liberty interest in the locale of their confinement." *Id*. Further, defendants note that the plaintiff still receives medical treatment at LCC, has admitted that the treatment at LCC is "probably adequate," *see id*., p. 20, *citing* Plaintiff's Deposition Transcript, Ex. B, p. 154, and has rejected treatment at NNCC of his own accord because he "dislikes" the bus ride from LCC to NNCC. *Id*., p. 20, *citing* Plaintiff's Deposition Transcript, Ex. B, p. 151-153. Plaintiff argues that the transfer constitutes adverse action because LCC is not equipped to provide for plaintiff's specific medical needs, that the bus rides between LCC and NNCC are adverse to his health because they further injure him, and that sometimes he must occasionally endure the bus ride to NNCC without receiving treatment before he is sent back (#54, p. 15).

It is true that "given a valid conviction," the Constitution does not "guarantee that the convicted prisoner will be placed in any particular prison" because "the conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons." *Meachum v. Fano*, 427 U.S. 215, 220 (1976). Nevertheless, prison officials may not transfer a prisoner in retaliation for expressing his constitutional rights. *Pratt v.*

10

*Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "To succeed on his retaliation claim, [the prisoner] need not establish an independent constitutional interest in… assignment to a given prison… because the crux of his claim is that state officials violated his First Amendment rights by retaliating against him for his protected speech activities." *Id*. Thus, it would be illegal for defendants to have transferred the plaintiff to LCC in retaliation for exercising his First Amendment rights. *Id*. at 807.

Here, the court concludes that although the plaintiff argues that his transfer to LCC is adverse because he must now travel to NNCC for his medical care, resulting in deterioration of his medical condition, he submits no evidence aside from his own statements, such as medical reports or affidavits in support of his claim. While it may be true that incarceration at LCC is less ideal for the plaintiff, the prison appears to be providing the plaintiff with medical care; therefore the plaintiff has failed to show adverse action.

**b. Legitimate Correctional Goal**

While not conceding that the plaintiff can prove elements two through four, defendants "skip to element 5," arguing that plaintiff cannot show that the transfer to LCC did not reasonably advance a legitimate correctional goal (#46, p. 20). Defendants cite to defendant Helling's discovery responses as evidence that there "was indeed a legitimate correction goal reasonably advanced by transferring plaintiff and placing him on the 'separatee' list of" Inmate A. *Id*. Plaintiff concedes that the defendants have a legitimate penological goal in securing the safety of inmate in their custody, but argues that if the defendants abused policies and procedures to punish plaintiff's exercise of his First Amendment rights, they "cannot assert that the actions taken against plaintiff served a valid penological purpose, even though he may have arguably ended up in the same position" (#54, p. 14).

11

Defendant Helling's responses to plaintiff's first set of interrogatories state that NNCC holds "a large population of elderly, infirmed, and easily confused inmates," due to the fact that the prison's regional medical center is located there (#46, Ex. A, Responses 15, 15(a) and 19). Defendant Helling states

> Protecting elderly, infirmed, and easily-confusing inmates from potentially predatory, fraudulent, and abusive conduct of other inmates is a legitimate correctional goal at NNCC and within the NDOC system. The elderly, infirmed and easily-confused inmates are especially vulnerable to exploitation. Such victimization is very difficult to discover, as physical force is often not used… When such victimization or potential victimization has been discovered, stopping the harm or threat of harm must be immediate…
>
> In the case at bar, NNCC correctional officials received a complaint from Complainant, an elderly, infirmed, and easily-confused inmate. The Complainant implicated Plaintiff in a potential scam, for which the Complainant feared he was defrauded, by the embezzlement of funds that were otherwise to be deposited into Complainant's interest-bearing trust account. Thus, the action of physically separating Plaintiff from Complainant reasonably advanced the above-referenced, legitimate correctional goals.

*Id.*, Ex. A, Response 15. Defendant Helling states that there was an official investigation into the possible fraud, and that

> The Complainant communicated with official NNCC Investigators… expressing concerns over the status of his funds. In particular, the Complainant was worried that his funds were being stolen or embezzled, by means of a fraudulently established or maintained trust account, for which he had not received any notification or bank statements confirming the state of his trust account. The Complainant identified Plaintiff, among others, as a person who was involved in this matter.

*Id.*, Ex. A, Response 2. Plaintiff admits that he referred Inmate A to Ms. Hearne, for assistance

in setting up a trust account for his funds.[6] *See* #21, ¶¶ 13 & 15. Although the defendants do not attach documentary evidence in their opposition, defendant Helling attests in his discovery responses that defendant Benedetti placed plaintiff on Inmate A's separatee list after communications between defendants Benedetti and Helling and based on an internal investigation, which revealed that plaintiff may have embezzled funds that were to be deposited into an interest-bearing trust account for Inmate A (#46, Ex. A, Responses 16, 17, 19). Defendant Helling states that inmates on a separatee list need not be identified by the particular inmate from whom they are being separated, but may be identified by prison administrators if there is a significant need for separation from another individual. *Id.*, Ex. A, Responses 19, 20.

Defendant Helling also states that the plaintiff was "medically cleared" for a move to LCC and that space was limited in NNCC's Unit 7b where plaintiff was placed at the beginning of the investigation. *Id.*, Ex. A, Responses 4. Plaintiff specifically could not be moved to Nevada State Prison, which is located in Carson City near NNCC, due to his medical restriction level. *Id.* Defendant Helling lists all of the documents, including confidential investigative reports, relied upon by defendants in making the decision to transfer plaintiff to LCC. *See id.*, Ex. A, Responses 7, 12, 14.

The court finds that the plaintiff has failed to demonstrate that defendants lacked a legitimate penological interest in transferring him to LCC. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1997) (The inmate bears the burden of pleading and proving the absence of

---

[6] In his complaint, plaintiff admits that he referred Inmate A to Ms. Hearne (#21, ¶¶ 13 & 15). Ms. Hearne states in her affidavit that the plaintiff referred Inmate A to her (#39, ¶ 11). The plaintiff's sister, Tonja Brown, also states in her affidavit that the plaintiff referred Inmate A to Ms. Hearne (#42, Affidavit dated May 19, 2006). However, plaintiff concurrently submitted the affidavit of another inmate, Joseph M. Carpino, who states that it was he (inmate Carpino) who referred Inmate A to Ms. Hearne (#41, ¶ 3). Additionally, the plaintiff submitted two affidavits from Inmate A – one which states that it was the plaintiff who referred him to Ms. Hearne (#40, Affidavit dated July 7, 2005, ¶ 1) and another which states "another one of my friends," not the plaintiff, found him the attorney who drafted his trust (#40, Affidavit dated October 24, 2005, ¶ 4).

13

legitimate correctional goals for the alleged retaliatory action). The defendants offer sworn testimony that they decided to transfer the plaintiff to LCC because he was implicated in a scheme whereby he may have been involved in taking money from an elderly inmate who was in his unit at NNCC, and they needed to separate him immediately from such victims (#46, Ex. A, Response 15). Defendants have a responsibility to secure the safety of all inmates, especially those who may be unable to protect themselves, such as elderly and disabled prisoners. Based on the evidence currently before the court, the plaintiff has failed to show that his transfer was not for the legitimate correctional purpose of securing the safety of such inmates by removing a potential predator from their midst. The defendants acted pursuant to their discretionary powers, and the court will not question such a transfer decision on the evidence currently before it.

Plaintiff argues that defendant Helling's interrogatory responses outlining the documents the prison relied upon to transfer him to LCC are false because the defendants purported to rely on the investigative report that was dated April 29, 2005, which was two days after the April 27, 2005 decision was made to transfer the plaintiff (#54, p. 10). However, defendant Helling's response to interrogatory three states that the defendant relied upon certain reports, "whether such documents or evidence was reviewed in draft form, as a work-in-progress, or in final form" (#46, Ex. A, Response 3). The court concludes that merely because the final draft of the investigative report was dated two days after the decision to transfer the plaintiff to LCC does not mean that the defendants did not review a previous draft that contained the same or similar information.

While the court notes that there is no evidence currently before it that directly proves that the plaintiff is guilty of defrauding Inmate A,[7] the court declines to insert itself into an internal

---

[7] The court notes that evidence submitted by the plaintiff states that the Trustee of the Inmate A Trust account set up by Ms. Hearne was Tonja Brown (#42, Affidavit of Tonja Brown, dated May 19, 2006). Tonja Brown is the plaintiff's sister. *See* #39, Affidavit of Treva J. Hearne, ¶ 2 (stating that she has represented the plaintiff and Ms. Brown since 2000). However, the plaintiff did not disclose his relationship

14

prison investigation or a decision to transfer the plaintiff to another facility on the evidence before it.

The court concludes that the plaintiff has failed to demonstrate the absence of legitimate correctional goals for the alleged retaliatory action.  Therefore, the court finds that the plaintiff has not offered evidence that there is a likelihood he will succeed on the merits of his retaliation claim.

### 3. Irreparable Injury

To obtain a preliminary injunction, plaintiff must offer evidence that he will be irreparably injured without the injunction.  *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995).  Injury that is "speculative" does not constitute irreparable harm.  *Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) *citing Goldie's Bookstore, Inc. v. Superior Court of State of California*, 739 F.2d 466, 472 (9th Cir. 1984).  "Courts generally do look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991) *citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief").

---

with Ms. Brown in his motion, plaintiff's motion refers to Ms. Brown only as the "trustee" of the Inmate A Trust.  *See* #36.  Ms. Hearne confirms that the plaintiff was the individual who gave Inmate A her name for assistance with the trust account.  *See* #39, ¶ 11.  However, even after admitting he gave Inmate A Ms. Hearne's contact information, *see* #21, ¶¶ 13 & 15, the plaintiff submitted a conflicting affidavit from an inmate, Joseph M. Carpino, stating that it was Mr. Carpino who referred Inmate A to Ms. Hearne (#41, ¶ 3).  Ms. Hearne's affidavit supports the prison's conclusion that Inmate A is elderly and that it is difficult to understand what outcome he desires with respect to his money.  *Id*., ¶ 10.  While these facts obviously are not conclusive evidence of fraud committed by the plaintiff, it is understandable to the court why prison officials were suspicious of the Inmate A Trust account situation.  The court finds there is more than adequate cause for defendants to initiate an investigation based on the following: (1) plaintiff's sister was the trustee of Inmate A's trust; (2) plaintiff submitted conflicting information; and 3) Inmate A complained to prison officials, *see* #46, Ex. A, Response 2.  Prison officials had a reasonable basis to inquire about plaintiff's involvement and to take precautions to protect elderly inmates housed with plaintiff and others in Unit 3.

Defendants argue that because the plaintiff waited almost one year after filing his original complaint to file a motion for an injunction, there is no urgency to the plaintiff's claims and therefore, no "need for a quick remedy" (#46, p. 17). Further, defendants note that there are pending cross-summary judgment motions before the court, and that "if this matter is not disposed of in the pending motions for summary judgment, they will soon-enough be disposed of by a jury at trial." *Id*. Defendants further state that all of plaintiff's injuries allegedly caused by the retaliation have already occurred, and thus, there is no "immediate" harm. *Id*., p. 25. Plaintiff contends that he was not "sleeping on his rights," but was attempting to obtain discovery that would adequately support a motion for preliminary injunction.

The court concludes that the plaintiff has not demonstrated irreparable harm. The plaintiff's main complaint is that he must travel by bus to medical appointments and that this has caused the deterioration of his medical condition (#36). However, the plaintiff stated in his deposition regarding his care at LCC "I probably have adequate medical care and it's not that these people are incompetent, I'm not saying that" (#46, Ex. B, Plaintiff's Deposition, p. 154). Although it appears that the plaintiff has made a choice not to attend medical appointments at NNCC because the bus ride harms his condition, *see id*., p. 152-153, other than his own opinion, the plaintiff does not present evidence, such as medical records or affidavits, that the bus ride is detrimental to his health. It is clear that medical treatment is available to the plaintiff should he chose to attend his appointments at NNCC. There is no evidence before the court to show that the plaintiff will incur immediate harm or detriment to his medical condition if his circumstances are not immediately changed. Thus, the court finds the plaintiff has not shown irreparable injury.

### 4. Balance of Hardships and the Public Interest

Because the court found that plaintiff failed to demonstrate a likelihood of success on the

merits and irreparable injury, the court has not addressed the balance of hardships or public interest elements.

### 5. Alternative Test

The Ninth Circuit has held that as an alternative to the four traditional equitable criteria for relief through preliminary injunction, plaintiff may prove either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor. *Southwest Voter Registration Educ. Project*, 344 F.3d at 917 (emphasis added). As set forth above, the court concludes that plaintiff has not shown that he can meet the first alternative test – a likelihood of success on the merits and irreparable injury.

Regarding the second alternative test, the plaintiff has failed to raise "serious questions" as to his retaliation claim. The defendants have presented evidence to show that after suspecting the plaintiff of involvement in a fraudulent scheme against a fellow inmate, the defendants had a legitimate penological reason to transfer the plaintiff away from the NNCC unit where there are many elderly and impressionable inmates that might be exploited. Further, the court finds that the balance of hardships does not tip "sharply" in plaintiff's favor. Although the court is aware that the plaintiff does not enjoy the bus ride between LCC and NNCC, the plaintiff has not presented evidence that he has been denied medical attention or that the bus ride is harmful to his health. The prison has a valid and important interest in protecting inmates that are unable to protect themselves. Thus, the plaintiff has not met the second alternative test.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not demonstrated a likelihood of success on the merits nor irreparable injury. Further, the

plaintiff has not met the alternative test by raising serious questions as to the merits and that the balance of hardships tips sharply in his favor. Therefore, the court recommends that plaintiff's motion for a preliminary injunction (#36) be **DENIED**.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for a preliminary injunction (#36) be **DENIED**.

**DATED:** January 16, 2007.

_____
**UNITED STATES MAGISTRATE JUDGE**